UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 CV 2002**

-------------------------------------------------------------------X

JONATHAN SMITH, TIFFANY FOSTER, DORRIS
HOLLIS, DEBBIE McCOY, and CHUCK ZLATKIN,

Plaintiffs,

-against-

NEW YORK METRO AREA POSTAL UNION and
CLARICE TORRENCE,

Defendants.

-------------------------------------------------------------------X

**VERIFIED
COMPLAINT**

**JURY TRIAL
DEMANDED**



PLAINTIFFS, as and for their Complaint, allege as follows:

1.      This is a complaint for damages and injunctive relief related to the misconduct of

a union President during an intra-union election campaign. Plaintiffs are challenging the slate

headed by the incumbent President. By this action, Plaintiffs complaint about:

      a.      The President's unlawful removal of individuals both from elected and

appointed positions and appointment of candidates running with her as replacements.

      b.      The President's utilization of union resources to circulate a new monthly

publication which praises the purported accomplishments of the incumbents, while denying the

challengers the use of the same forum to promote their candidacies.

**JURISDICTION**

2.      This Court's jurisdiction is invoked pursuant to 29 U.S.C. §§ 412 and 481(c).

**PARTIES**

3.      Plaintiffs Jonathan Smith, Tiffany Foster, Dorris Hollis, Debbie Mccoy, and

Chuck Zlatkin are "members" of the New York Metro Area Postal Union as that term is defined

at Section 3(o) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29

U.S.C. § 402(o). Plaintiffs are also candidates for various officer positions in the 2012 election at New York Metro Area Postal Union.

4.     New York Metro Area Postal Union ("NY Metro") is a local labor organization as defined at Section 3(i) of the LMRDA, 29 U.S.C. § 402(i), which represents, for purposes of collective bargaining approximately 6,000 clerical, maintenance, motor vehicle, and support employees of the Unites States Postal Service ("USPS") in Manhattan, the Bronx, and northern New Jersey. NY Metro is an affiliated subordinate local of the American Postal Workers Union (APWU), itself an affiliate of the AFL-CIO an international labor organization. NY Metro is governed by its own Constitution and Bylaws, as well as that of the APWU and AFL-CIO. New York Metro Area Postal Union's principal office is located at 350 West 31st Street, New York, NY 10001.

5.     Defendant Clarice Torrence is President of NY Metro. She is sued individually on the Second Cause of Action.

## As AND FOR A FIRST CAUSE OF ACTION

6.     NY Metro has in excess of 6,000 members who work at thousands of locations throughout the New York Metropolitan Area. Campaigning for a union-wide office is an enormous task, and reaching out to all sectors of the membership is quite difficult for any candidate. Postage alone for a mailing would cost a candidate over $2,700. Printing probably doubles that cost.

7.     During February of 2012, less than two months prior to the mailing of the ballots in its officer election, NY Metro began distributing by mail, for the first time in the union's history, a monthly newsletter entitled METRO MINUTE MAIL, a copy of which is attached herein as Exhibit A. That newsletter lavishly praises the purported actions of the incumbent

leadership of NY Metro for the interests of union members, while remaining silent about the actions of other union members who have done work in the interests of the union.

8. The February 2012 METRO MINUTE MAIL indicates it will be the first of many monthly installments.

9. Prior to the publication of the METRO MINUTE MAIL, NY Metro had published a newspaper.

    a. Prior to 2006 it was published monthly; plaintiff Zlatkin became editor in 2005.

    b. In 2006 the paper was reduced to eight issues per year.

    c. In 2011 the paper was reduced to three issues per year. Zlatkin, who had been elected Legislative Director, continued to edit it.

    d. In January 2012 Zlatkin put together an issue which included the election rules. The next issue was not due out until April 2012.

    e. In late January, NY Metro Secretary Treasurer Wilfredo Figueroa told Zlatkin to prepare a February issue. Shortly thereafter, Torrence told Zlatkin that there would be a March issue.

    f. On February 7, 2012, after Zlatkin made it known to Torrence that he would not run for re-election on her slate, he was removed as the newsletter editor and was told that he could not use space or equipment in the union's office to do his work as the Legislative Director.

    g. Several days later, the union's website was modified so as to remove the names of all Executive Board members and officers, and to remove several speeches given by Zlatkin as part of the union's effort to stop the closing of post offices.

h.     On or about February 9, 2012, the METRO MINUTE MAIL was published.

10.     On February 16 Plaintiffs, by counsel, wrote to NY Metro complaining about the distribution of the aforementioned newsletter and requested that NY Metro, at its expense, distribute a newsletter authored by the insurgent slate of candidates to rectify the situation. See Exhibit B. On February 23, by letter from Election Chairperson Althris Alexander, Plaintiffs' request was denied. See Exhibit C.

11.     By allowing the incumbent Board to use NY Metro resources and mailing list for a thinly disguised partisan mailing and not allowing Plaintiffs an equal opportunity to do the same, NY Metro has violated 29 U.S.C. § 481 (c).

## AS AND FOR A SECOND CAUSE OF ACTION

12.     Petitioners reallege and incorporate by reference the allegations set forth in the foregoing paragraphs 1–11 as if fully set forth herein.

13.     Prior to February 2012, plaintiffs held the following positions with NY Metro:

a.     Tiffany Foster held the title of Bronx Coordinator for seven years. In that position she serviced six postal facilities which did not have shop stewards.

b.     Debby McCoy was the elected Director for the Bronx. In that position she serviced all postal facilities in the Bronx.

c.     Dorris Hollis held the appointed position of Bronx Coordinator.

14.     After learning that plaintiffs Zlatkin, Foster, McCoy, and Hollis were not supporting her re-election efforts, defendant Torrence

a.     Removed Zlatkin as newspaper editor after seven years and barred him from using the union office for his Legislative Director Work.

b.    Removed Tiffany Foster as Bronx Coordinator and replaced her with Evelyn Rojas, Torrence's candidate for Assistant Bronx Director.

c.    Removed Debbie McCoy from her elected position, then reinstated her, but barred her from leaving her facility without Torrence's permission (see Exhibit D). Torrence appointed Jimmy Perez as Acting Bronx Director, with freedom to move around the whole borough. Perez is Torrence's candidate for Bronx Director.

d.    Removed Doris Hollis as Bronx Coordinator and replaced her with Theodora Nicholas, a candidate for Section 5 Director on Torrence's slate.

e.    The aforedescribed actions amount to a blatant manipulation of union resources in order ot gain advantage during an election, and a scheme to suppress dissent. Furthermore, the President, under the NY Metro Constitution, does not have authority to remove officials, elected or appointed, from union office.

15.    By acting as aforedescribed, Torrence violated the rights of plaintiffs Zlatkin, McCoy, Foster, and Hollis, and those of the union membership, under Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2).

## INJURY

16.    Unless defendants are enjoined from failing to give plaintiffs an equivalent newsletter mailing and from failing to reinstate the removed plaintiffs to the former positions, plaintiffs, and the union membership, will suffer irreparable injury.

17.    Torrence, by acting as she has, acted in reckless disregard of plaintiffs' rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray:

1.     That this Court issue a preliminary and permanent injunction requiring New York Metro Area Postal Union to pay the cost of printing, and mail out to its members a monthly election campaign newsletter authorized by Plaintiffs;

2.     That this Court enter a preliminary and permanent injunction reinstating all plaintiffs except Smith to their former positions with NY Metro, with their former responsibilities;

3.     That this Court enter a judgment against Torrence for one dollar in nominal damages and $500,000 in punitive damages; and

4.     That the Court award such other and further relief as is just and proper, including attorneys fees and costs.

## JURY DEMAND

Plaintiffs demand a jury trial.


Dated: March  2, 2012


ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiffs*

By: _____

Arthur Z. Schwartz
Richard Soto
225 Broadway, Suite 1902
New York, New York 10007
Tel: 212-285-1400
Fax: 718-228-5537

## VERIFICATION

Tiffany Foster, being duly sworn, deposes and says. I am one of the plaintiffs sherein. I have read the foregoing verified complaint and know its contents. The verified complaint is true to my knowledge, except as to matters alleged on information and belief, and as to these matters, I believe it to be true.

I declare under the penalties of perjury that the foregoing is true and correct.


Dated: Marcxh 2, 2012

## VERIFICATION

Jonathan Smith, being duly sworn, deposes and says. I am one of the plaintiffs sherein. I have read the foregoing verified complaint and know its contents. The verified complaint is true to my knowledge, except as to matters alleged on information and belief, and as to these matters, I believe it to be true.

I declare under the penalties of perjury that the foregoing is true and correct.

Dated: Marcxh 2, 2012

*Jonathan Smith*

# EXHIBIT A



# NEW YORK METRO AREA POSTAL UNION, APWU AFL-CIO
### 350 WEST 31ST STREET, NEW YORK N.Y. 10001 (212) 563-7553  Fax (212) 643-9051

A Democratic Trade Union

Clarice Torrence
*President*
Clarence Wall Jr.
*Executive V. P.*
Frankie Sanchez
*Director of Industrial Relations*
Wilfredo Figueroa
*Secretary-Treasurer*
Abritto Divine Pa' El
*Director of Organization*

# METRO MINUTE MAIL
## New York Metro Area Postal Union's Membership Newsletter
### February 2012

Hello New York Metro Members,

This is our first issue of this Newsletter which is designed to keep you abreast of current news and information pertaining to our current working conditions and/or negotiations within our Local. We will provide monthly updates in our Newsletter as well as more extensive information in our quarterly issues of the Union Mail.

Brad Nicholls (Morgan T-3) is the New Managing Editor.

We hope that you will appreciate this joint effort to serve our members in a new way.

### As always we thank you for your support.

- ❖ Management originally approached the National Union in June 2011 notifying them of their intent to close the Bronx GPO as a result of their AMP (Area Mail Processing) study. As a result, Management informed NY Metro that they would excess 98 clerks from the Bronx. After many meetings, discussions and arguments that number dropped to 32 by November 19, 2011. As of this moment SEVEN (7) of those clerks will be returning to the Bronx. We anticipate the remaining 25 will be returned shortly.

- ❖ Additionally Management had planned to excess nearly 400 Clerks from Manhattan. After 2 years of that number was reduced to 127. Many of these employees were sent to Post Offices over 100 miles away. SEVEN (7) of those employees were removed from service because of that hardship. However, after TWO (2) YEARS of intense fighting ALL were brought back to Manhattan and FIVE (5) of the SEVEN (7) removed received Back Pay Awards for up to the two years they were out of work.

- ❖ In the Bronx the issue of PSEs remaining while Clerks were excessed has been grieved and furthermore, the Union has filed unfair labor charges for this action with the National Labor Relations Board (NLRB). The Union will continue to fight for the rights of its members.

- ❖ Maintenance employees in the Bronx were not exempt from Management's hit list. Forty-two (42) employees were targeted for excessing by Management. The majority of those employees landed in Manhattan as Custodians.

- ❖ Within the same AMP study Employees who were targeted came intact to Manhattan and in doing so the Union was able to save 71 Motor Vehicle positions.

- ❖ Both Clerks and Custodians maintain saved grade and retreat rights as exercised by the 6 returning Clerks.

# METRO MINUTE MAIL
**February 2012**
**Page 2**

- ❖ NDC (NJ Bulk) Negotiations took place in September and October with Management to establish a new Local Memorandum of Understanding (LMOU). Management attempted to REDUCE Wash Up Times and Vacation Percentages. Management was required to move their issues to Arbitration which they neglected to do. As a result, the LMOU that was negotiated by the Union 6 years ago will remain in effect for the next 3 years. The NDC LMOU has been recognized as one of the best Local Memos throughout the Country.
- ❖ No Local Negotiations were held because Management neglected to notify the Union in a timely manner. Therefore, the implementation of Non Traditional Full Time (NTFT) Schedules will be limited to 10 hour/4 day schedules for a total of 40 hours. In stations where Management has unilaterally implemented Flexible-NTFT schedules, the Union will file Grievance because the Union never agreed to such scheduling.
- ❖ In 2006 Management was mandated to pay thousands of dollars to Maintenance Employees due to MS-47 Violations. No sooner than they paid the penalties Management repeated the same violations. The Arbitration Hearing for this case will be held on March 27, 2012.
- ❖ A $96,000 Arbitration Award Settlement on Sub-Contracting Custodial work was won by New York Metro. Arbitrators ruled that the total award be divided among ALL CUSTODIANS in Manhattan who were on the Overtime Desired List between 2008 and June 2011.

*** If you feel that you meet the requirements to be eligible to receive this award give the following information to your Shop Steward: Name, Pay Location & Assignment within the award period***

- ❖ Throughout Manhattan and the Bronx, work that Management gave to outside contractors will be returned to the Custodial Craft.
- ❖ National Officers advise that Bills 2309 and 1789 MUST BE OPPOSED! Both Bills are destructive to our future employment with the Postal Service. President Cliff Guffey stated that Bill 1789 must be amended because it gives short term relief but causes long term damage to the Postal Service.

For further information on these Bills please visit the National's website at
**www.apwu.org**

## MINUTE MAIL STAFF

**BRAD NICHOLLS**        **CLARICE TORRENCE**        **GISELLE E. AMBURSLEY**

# EXHIBIT B

**Advocates for Justice**
**Chartered Attorneys**

New York Office
225 Broadway
Suite 1902
New York, New York 10007
p: 212-285-1400
f: 212-285-1410



JUSTICE

**Arthur Z. Schwartz**
Attorney at Law
Admitted in NY, PA and DC
917-923-8136
aschwartz@advocatesny.com

February 16, 2012

By Fax (212-643-9051)
and Overnight Mail

Althris Alexander
Chairperson
Election Committee
N.Y. Metro Area Postal Union
350 West 31st Street
New York, NY 10001

       Re:    Election Protest

Dear Ms. Alexander:

      On behalf of Jonathan Smith and his slate we file the following protest.

    1.    Despite requests that the American Arbitration Association receive ballots back through a post office not staffed by postal workers voting in this election, the Election Committee is compromising the integrity of the vote. We demand that you address this problem.

    2.    This week the union leadership distributed, by mail, a new Newsletter advertising the accomplishments of the local leadership. A copy is enclosed. Not only was this union campaign literature, it also omitted Chuck Zlatkin from the list of officers – because he is running on a slate opposing the incumbent president. We demand that the Local Election Committee direct the Local to allow Jonathan Smith's slate to do a mailing to the membership at the Local's expense.

    3.    Despite repeated requests, Mr. Smith has been unable to get a count of how many members are eligible to vote. He needs that number in order to do his mailing.

    4.    In order to deliberately use union resources in the election, President Torrence has barred an elected officer, Chuck Zlatkin, from the union office, preventing him from doing his

# Advocates for Justice
## Chartered Attorneys

work as Legislative Director, has barred two elected directors and an elected shop steward from conducting union business, and has removed Mr. Zlatkin as Newspaper Editor. The intent here is both to limit access of opponents to the membership and to add new appointed stewards who will campaign for the Torrence slate. We demand that the Election Committee intervene and direct President Toerrence to reverse these actions.

If no response is received by Wednesday, February 22, 2012, we will proceed to seek judicial relief.

Sincerely,

Arthur Z. Schwartz

AZS:dr
Encl.

cc:     Jonathan Smith
        Pitta & Giblin, LLP

# EXHIBIT C

CERTIFIED MAIL 7003 3110 0000 5109 3870

February 23, 2012

Advocates for Justice
Attn: Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, NY 10007

Re: Election Protests of Jonathan Smith

Dear Mr. Schwartz:

The Election Committee has received your protest letter on behalf of Mr. Jonathan Smith. We've addressed

each protest item in the same order as they appear in your letter.

1. **The American Arbitration Association (AAA) should receive ballots through a post office not**

   **staffed by postal workers voting in this election; otherwise, the Election Committee is**

   **compromising the integrity of the vote.**

This issue was addressed in our previous letter to you dated January 24th, 2011. As stated in Rule No. 18 of the

Election Rules, the AAA is conducting the election. The AAA will be responsible for the mailing of the ballots,

the security of the ballots, and the tabulation of the ballots. The security of the ballots will solely be maintained

by the AAA. The AAA's standard operating procedure is to designate their own post office box to serve as the

depository for all of the ballots which will be cast by the membership. There is no reason for the union to

request that the AAA deviate from their normal operating procedures in this regard. There is no reason to

believe that the integrity of the vote will be compromised by the Election Committee, or by any member of NY

Metro Area Postal Union, since the physical handling of the ballots will be done exclusively by the personnel of

the AAA.

2. **This week the union leadership distributed by mail a new Newsletter advertising the accomplishments of the local leadership. Not only was this union campaign literature, it also omitted Chuck Zlatkin from the list of officers, because he is running on a slate opposing the incumbent President. We demand that the Local Election Committee direct the Local to allow Jonathan Smith's slate to do a mailing to the membership at the Local's expense.**

The Election Committee has reviewed a copy of the Newsletter which you have enclosed with your protest. It is our conclusion that all of the information contained in the Newsletter was news worthy information, which would have been published even if the union's regularly scheduled election of officers was not being held. There is nothing in the Newsletter which directly or indirectly can be interpreted as campaign material on behalf of the incumbent administration.

We also would like to point out that since Mr. Zlatkin is not a full time officer, his name, as well as the names of twenty three (23) other part time officers, was omitted from the Newsletter and from the stationary of NY Metro, because it has been the past practice of the union that only the names of the full time officers are included on any NY Metro stationary, its newspaper or newsletter publications.

Please be advised that Mr. Zlatkin attended a meeting, where it was agreed that the union's newspaper, titled The Union Mail, would be mailed quarterly instead of monthly, in order to reduce the cost to the union of publishing the newspaper. It was agreed at that meeting that a Newsletter would be published when events warrant. The Newsletter which you have attached to Mr. Smith's protest contained important information for the entire membership.

Finally, the Election Committee has not received any written or telephonic requests from Mr. Smith or from any other member of his slate, requesting that the union mail his campaign literature. As stated in Rule No. 14 of the Election Rules, all candidates may request that their campaign literature be mailed to the membership at the candidate's expense. Pursuant to Rule No. 14, any candidate who wants to have their campaign literature mailed to the membership should contact Rick Kohn of Consolidated Color Press Inc., at (212) 929-8197, and he will provide any candidate with all of the information relative to the mailing of campaign literature, including the cost. Please review Rule No. 14 for additional information.

3. **Despite repeated requests, Mr. Smith has been unable to get a count of how many members are eligible to vote. He needs that number in order to do his mailing.**

To date, neither the Election Committee nor the Secretary Treasurer has received any written or telephonic request for information as to the number of members in good standing of NY Metro. Since you stated in your letter that this information is necessary in order for Mr. Smith's slate to mail their campaign literature, Mr. Smith should contact Mr. Kohn of Consolidated Color Press, who will be happy to provide him with that information, and he will see to it that Mr. Smith's campaign literature will be mailed to the entire membership. Please be advised that regardless of how many members in good standing there are at the time Mr. Smith decides to do his mailing, the literature must be mailed at the candidate's expense. Mr. Kohn will charge all candidates who are doing a campaign mailing, for affixing the address labels to the envelopes containing the campaign literature, and for the postage, which will be based on the number of members in good standing as of the date of the mailing. As a former officer of NY Metro, your client Mr. Smith should know that the number of members in good standing can fluctuate based on the size of the membership at the time of the mailing. As a point of information, the total number of members in good standing of NY Metro as of this date is 5035.

4. **In order to deliberately use union resources in the election, President Torrence has barred an elected officer, Chuck Zlatkin, from the union office, preventing him from doing his work as Legislative Director, has barred two elected directors and an elected shop steward from conducting union business, and has removed Mr. Zlatkin as Newspaper Editor.**

Please be advised that pursuant to the past practice of the union, the "Editor Room" has been utilized by the Editor or the Managing Editor of the Union Mail, and the Legislative/Political Director has never occupied any office at the Local and receives a salary as a part time officer.

The Election Committee's investigation into this matter concluded that Mr. Zlatkin was not the Editor of the Union Mail at the time of his replacement. Mr. Zlatkin was replaced as Managing Editor of the Union Mail by Mr. Herman "Brad" Nicholas. This action was taken with the approval of the union's Executive Board, and it had absolutely nothing to do with the up-coming election of officers. The Executive Board's decision to

remove Mr. Zlatkin as Managing Editor of the <u>Union Mail</u> was based solely on his refusal to publish the periodic Newsletter, instead of publishing monthly editions of <u>The Union Mail</u>.

With respect to your allegation concerning the barring of two elected Directors and an elected shop steward from conducting union business, the Election Committee does not know which of those Directors and the one Shop Steward you were referencing, since you did not mention their names in your letter.

The Election Committee takes very seriously the protests it receives during these elections. Each is thoroughly investigated, as were each of Mr. Smith's allegations which were contained in your letter. We have responded to each of the allegations and as a result of our investigation, we have concluded that there were no violations of the election rules, the NY Metro Constitution, or the APWU Constitution.

Sincerely

Althris Alexander

Chairperson Election Committee

**EXHIBIT D**

FYI

**From:** Clarice Torrence [mailto:c.torrence@nymetro.org]
**Sent:** Friday, February 17, 2012 4:15 PM
**To:** Duncan-Smith, Vanessa - New York, NY
**Subject:**

~~Duline McCoy's suspension as Director is void. However she will not~~ need to be released from her station without notification from myself. She may only file grievances in her station Morris Heights.